UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X

UNITED STATES OF AMERICA

              -against-

MON-LEANG MUI

              Defendant.
------------------------------------------------X

SUPPLEMENTAL SENTENCING
MEMORANDUM

02-CR-1405

GARAUFIS, District Judge.

I sentenced defendant Mon-Leang Mui to a term of 96 months in the custody of the Attorney General on April 7, 2005, following Mui's conviction by a jury verdict on all three counts of the indictment against him: (1) corrupt interference with the due administration of the tax laws; (2) tax evasion; and (3) making false statements to government investigators. Mui's total offense level was 22, and as a first-time offender, he was placed in Criminal History Category I. Accordingly, the recommended Guideline range was 41 to 51 months. Because the sentence I have imposed in this case is substantially more severe than that recommended by the Sentencing Guidelines, I write to re-state my rationale, which was first declared on the record at sentencing, for imposing this sentence in accordance with 18 U.S.C. § 3553(c)(2). In my view, both the severity of the offenses committed by Mui and his brazen attempts to defeat every effort to uncover his wrongful behavior and redress the wrong done to his victims compel an upward departure in this case.

First, with respect to the severity of Mui's offense, the evidence presented at trial

1

unequivocally established that Mui swindled Mr. and Mrs. Tung, two Chinese immigrants who had very limited comprehension of written and spoken English, out of approximately $430,000. Mui gained access to their funds when the Tungs came to him for help in dealing with an IRS audit of their Chinatown garment factory. Mui first falsely represented that the Tungs owed the IRS approximately $1,000,000 in back payroll taxes, and that the IRS was considering launching a criminal investigation of the Tungs. This was a complete fabrication. The IRS had not completed its audit at the time that Mui made this representation, and ultimately concluded that the Tungs owed less than $100,000 in taxes, penalties and interest. Testimony at trial also established that the IRS had never considered opening a criminal inquiry into the Tungs. Having thus frightened his clients, Mui then convinced the Tungs to make two payments to the government totaling just under $430,000 under the guise that Mui had reached a settlement with the IRS on their behalf. Believing that they had no other option, the Tungs sold their house and borrowed extensively from family members and friends to raise this money. They then wrote cashier's checks to the IRS, and gave them to Mui.

Mui indeed sent these checks to the IRS; however, he wrote a tax identification number on the back of the checks that did not belong to the Tungs or their business. Instead, that number was the tax identification number of his mother. Accordingly, the IRS credited the Tungs' money to Mui's mother instead of the Tungs. Mui then filed tax returns claiming that his mother owed no income tax, and the Tungs' money was duly refunded by the IRS and deposited in a bank account jointly held by Mui and his mother. Mui then withdrew the Tungs' money from that account to pay debts that he had incurred. This scheme, in which Mui abused his position as a tax advisor to defraud the Tungs and employed the IRS as an unwitting money laundering

instrument, left the Tungs destitute and with their tax obligations still unpaid. Mui's actions were all the more reprehensible because he took advantage of vulnerable members of his own ethnic community, which he purported to serve as a "Certified Public Accountant" and tax advisor, in order to enrich himself.

The sentence also reflects my disapprobation of Mui's efforts to derail the IRS investigation of his conduct, the state civil proceeding brought against him by the Tungs, and the federal criminal case tried before me through an unending string of lies and distortions. Mui lied to the IRS investigators who attempted to uncover the identity of the mysterious taxpayer (Mui's mother) to whose account the Tungs' attempted tax payments had flowed. He also lied to them about whether he was a certified public accountant. He perjured himself in his state court deposition, and then again on the witness stand at trial, claiming that he had no knowledge of what had happened to the Tungs' money and blaming the IRS for its misallocation.

He then perjured himself over and over again in my courtroom during this trial, offering up incredible and conflicting explanations of his failure to file a tax return for over twenty years, blaming his deceased mother for bilking the Tungs (although his mother had never met the Tungs, and despite the fact that his own signature was on numerous documents that had directed the Tungs' funds along their winding path back to his pocket), accusing the highly-qualified Cantonese interpreters who ably serve the courts of this District of misinterpreting his words when he decided that he wanted to change his prior testimony, and maintaining that he was entitled to hold himself out as a CPA because he occasionally consulted with CPAs. Moreover, when several members of Mui's family took the stand as defense witnesses, they also offered up highly questionable testimony in support of Mui's suggestion that his dead mother had been

3

behind the crimes. This conduct forced me to issue a warning against subornation of perjury to Mui's trial attorney in open court, and left me suspicious that Mui was suborning perjured testimony in a last, desperate attempt to escape the consequences of his actions.

I also note that there has been an allegation that Mui's deceitful behavior toward government investigators continued even after his trial. On April 12, 2005 the government requested that I revoke Mui's bail, alleging that Mui had told New York State Department of State investigator Jack Bilello that his convictions had been overturned on appeal in an apparent attempt to retain his notary public commission. I held a hearing on this incident on April 28, 2005 at which both Mui and Bilello testified. Bilello testified that Mui had affirmatively stated that his conviction had been overturned on appeal, and that he should be permitted to retain his commission pending a new trial. Mui testified that he merely stated that he planned to appeal and that he hoped his appeal would be successful. At the conclusion of his testimony, at the request of the court, Mui agreed to surrender his notary public commission forthwith. I therefore did not make any finding of fact regarding this incident, and declined to revoke Mui's bail or adjust the sentence I had imposed. However, Mr. Bilello testified credibly as to his conversation with Mui, and given Mui's established proclivity to play fast and loose with the truth under oath, I am hardly sanguine that Mui has adopted a new attitude of veracity and compliance in his dealings with government investigators.

This court can neither countenance conduct of the kind that Mui perpetrated against the Tungs and against the United States, nor the egregious lack of respect that Mui has displayed toward the courts of New York and the United States, and indeed toward the pursuit of justice. I rarely grant government motions for upward departures in sentencing, and am of the view that in

the vast majority of cases, a sentence within the range recommended by the Guidelines is reasonable. However, for the reasons stated above, I am convinced that a Guideline sentence would be far too mild a punishment for Mui's conduct. Accordingly, I sentenced this defendant to serve a term of 96 months in the custody of the Attorney General. I direct that this Supplemental Sentencing Memorandum be included in the Judgment.

SO ORDERED.

Dated: October 18, 2005
      Brooklyn, NY

/signed/
_____
Nicholas G. Garaufis
United States District Judge